IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

CLAUDINE LEE,
*As Administrator of the Estate of
Stephen Andre Lee*,
          Plaintiff,

v.                                      Civil Case No. 3:11cv815-JAG

R.D. MARKS,
          Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on the motion for summary judgment filed by the defendant, Officer R. D. Marks. (Dk. No. 18.) The plaintiff is Claudine Lee, Administrator of the Estate of Stephen Andre Lee, whom Officer Marks shot and killed.[1] She has filed claims under 42 U.S.C. §1983, asserting violations of the Fourth and Fourteenth Amendments. She also raises state law claims of assault and battery, gross negligence, and "wrongful death."

This case presents an unusual procedural issue. Ordinarily, in ruling on a motion for summary judgment, a court must assume the truth of the non-moving party's evidence. Here, the parties offer differing testimony about part of the incident that led to Lee's death. But because the plaintiff's evidence contradicts scientific evidence which cannot be attacked, no rational jury could believe the plaintiff's version of the events, and the Court will accept the defendant's evidence as true.

The record shows that Lee posed a serious threat to the safety of Officer Marks, four other officers, and any unwitting private citizens on the streets. For this reason alone, all of the

---

[1] Given their identity of interest, the Court will refer to both the administrator and the deceased as "Lee" in this opinion.

plaintiff's claims—both state and federal—must fail. In addition, Marks has raised valid defenses of qualified and sovereign immunity. Accordingly, the Court grants the defendant's motion for summary judgment.

## I. Facts

Officer Marks is a Petersburg, Virginia, police officer. While on patrol on December 15, 2010, he shot and killed Lee. This case deals with the events leading to the shooting and their legal consequences.

Most of the facts in the case are not in dispute. Late in the evening of December 15, 2010, Marks received a report of a hit and run accident in his vicinity. Shortly afterwards, a car drove straight toward Marks' police cruiser. Marks turned on his blue lights and siren, but the car did not stop; only a last second swerve averted a head-on collision. Marks radioed about the near wreck to dispatch, and indicated that he would follow and stop the car. At that point, four other officers responded to the area to provide back-up.

Officer Marks turned his car around, and caught and stopped the other car, driven by Lee. Lee told him that something was wrong with his car, and that he had just hit something. Marks observed front end damage on Lee's car. Marks smelled marijuana smoke coming from the car, along with a strong odor of cologne. He asked Lee to get out of the car, and to put his hands behind his back. As Marks reached for his handcuffs, Lee tensed up and said, "Fuck this." Lee then tried to get back into his car. Since he had not searched the car for weapons, Officer Marks feared that Lee was trying to get a gun.

Officer Marks tried to pull Lee out of the car, but Lee started the engine and took off with Marks hanging out of the door. Marks and Lee struggled, and the car gained speed. Marks told Lee to stop the car, to no avail. Officer Marks told Lee to stop the car or "I will kill you."

2

Officer Marks drew his pistol, but Lee brushed the gun away. By this time, however, Lee had driven onto a sidewalk. He slowed down, and the car stopped when it hit a stop sign and a brick wall.

After the car stopped, Officer Marks tried again to pull Lee out of the car, and the two grappled on the ground just outside the driver's side door. Lee again escaped Marks' grasp. One of the back-up officers tried to restrain Lee from the passenger side of the car. Lee, however, managed to get back into the car and started to back up.

So far, the parties agree about the salient facts, but their paths fork here. Lee has produced witnesses whose testimony, viewed in the light most favorable to Lee, showed that Lee backed up slowly. One of Lee's witnesses says that Officer Marks stood beside the car and fired point blank at Lee.[2]

Officer Marks tells a different story. He says that Lee started to back up quickly, and that Marks was dragged along while lying down and hanging out of the open front door. Marks said that he felt the tires of the car hit his foot, and that he felt the weight of the car come down when the car drove off the curb. Officer Marks asked Lee to stop the car, but Lee's response was, "Fuck you." While being dragged beside the car, Marks says he then drew his pistol and shot Lee.

Marks' version of the events is supported by forensic evidence. The medical examiner reported that Lee died from a single bullet wound to his torso. The bullet entered Lee's body on the left side, 20 inches below the top of his head. The bullet went upwards through his chest cavity and lodged on Lee's right side, 10 inches below the top of the head. Gunshot residue

---

[2] Marks attacks the credibility of Lee's witnesses. For instance, he notes that one witness apparently could not tell left from right; another did not have a good opportunity to observe the events in question. These arguments play no role in the Court's decision.

indicated that, at the time of the shot, the barrel of the gun was somewhere between touching Lee's body and 24 inches away. Measurements at the scene showed that Lee had backed up 45 feet before the car stopped moving after the shooting.

## II. **Standard of Review**

The standard of review of summary judgment motions typically involves rejecting any evidence that contradicts evidence offered by the non-moving party. This case, however, falls into a special and limited category of cases in which indisputable evidence (here, forensic evidence) refutes the non-moving party's version of the events. In such a case, the Court may grant summary judgment because no reasonable juror could accept the proffered evidence. In essence, the evidence is not in genuine dispute.

Ordinarily, summary judgment is appropriate when the movant establishes that there is no genuine dispute of any material fact and he is thereby entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). After an adequate period of time for discovery, Rule 56(a) mandates a grant of summary judgment against a party who fails to make a showing sufficient to establish the existence of an essential element of a claim or defense on which that party will bear the burden of proof at trial. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322. The court resolves all genuine factual disputes and inferences in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

Once the movant satisfies its showing for summary judgment, the burden shifts to the non-moving party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–88 (1986). The non-movant may not rest on claims within its pleading, but "must come forward with specific facts showing that there is a genuine

issue for trial." *Id.* at 587 (internal quotation marks and emphasis omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006) ("Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law."). Of course, the Court cannot weigh the evidence or make credibility determinations in its summary judgment analysis. *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004). Ultimately, the relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52 (1986).

In qualified immunity cases, the parties frequently disagree about some of the relevant facts. In the ordinary course, a reviewing court adopts the plaintiff's version of the facts, provided it has some evidentiary support. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Some cases, however, present "an added wrinkle" to the consideration of disputed facts. *Scott v. Harris*, 550 U.S. 372, 378–80 (2007). In a limited category of cases, some element of evidence cannot be controverted. In such cases, even when the parties dispute what happened, the court need not adopt the non-moving party's version of disputed facts if that version "is blatantly contradicted by the record, so that no reasonable jury could believe it." *Id.* at 380. *Scott v. Harris*, 550 U.S. 372 (2007), like this case, involved a police officer who allegedly used unconstitutionally excessive force—in that case at the conclusion of a high speed chase. The parties had two different versions of what happened during the chase. A video recording of the

relevant parts of the chase, however, refuted the plaintiff's version of the events. Because of the irrefutable evidence in the record, the Court held that the case was ripe for summary judgment.

In the instant case, the forensic scientific evidence in the record refutes a portion of the plaintiff's version of the events. First, the trajectory of the bullet in Lee's body proves that Officer Marks must have been on the ground when he fired the fatal shot, not standing beside the car. The bullet entered Lee on his left side 20 inches below the top of his head, and wound up on his right side 10 inches from the top of his head. Since Lee was sitting in the driver's seat, this trajectory means that Officer Marks had to be on the ground at the time he fired his weapon, refuting the plaintiff's evidence that he stood and fired point blank.

Second, the bullet was shot no more than 24 inches from Lee's torso. Since the car door was open and the car drove backwards for 45 feet, Marks must have been dragged by the car as it backed up.

Accordingly, the Court concludes that the events immediately leading up to the shooting are as follows: Officer Marks lay or knelt on the ground after his fight with Lee. When Lee started to back up, the door of his car either hit or threatened to hit Marks. Officer Marks held on to either the door or the car frame and was pulled along while Lee's car backed up. Marks then fired upward at Lee, killing him.

### III. Discussion

*A. Principles of Qualified Immunity*

Qualified immunity protects a government official from liability in §1983 actions arising from the performance of discretionary actions. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It applies so long as the official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* Marks, then, is

entitled to summary judgment if the facts do not show that he violated a clearly established right of which a reasonable official in his shoes would know. *Mitchell v. Forsyth*, 472 U.S. 511, 524 (1985); *Harlow*, 457 U.S. at 815–16.

The analysis of a qualified immunity claim entails several steps. First, the Court must decide "whether a constitutional right would have been violated on the facts alleged." *Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Bailey v. Kennedy*, 349 F.3d 731, 739 (4th Cir. 2003). This includes an analysis, based on the evidence, of the specific right allegedly violated, and a conclusion that such a right exists in the particular circumstances of the case. *Wilson v. Layne*, 526 U.S. 603, 609 (1999). Then, the court must determine whether, at the time of the violation, the right was clearly established such that a reasonable officer in the defendant's position would know that his actions would violate that right. *Simmons v. Poe*, 47 F.3d 1370, 1385 (4th Cir. 1995).[3]

At the time of the officer's actions, the constitutional right allegedly violated must be clearly defined in a concrete factual situation such that its contours are clear, unmistakable, and applicable to the precise conduct at issue. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). The focus is upon the right, not at an abstract level, but at the level of the specific conduct being challenged. *Simmons*, 47 F.3d at 1385. As the Fourth Circuit Court of Appeals has said, the doctrine exists so that "[o]fficals are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). Although the analysis focuses on objective facts, the immunity inquiry must be filtered through the lens of the officer's perceptions at the time of the incident in question. *Rowland v. Perry*, 41 F.3d 167,

---

[3] The order in which the Court makes these inquiries is flexible. Where it is clear that the right was not clearly established at the time of the conduct, the Court need not undertake the academic task of determining whether the right exists and has been violated. *Walker v. Prince George's Cnty.*, 575 F.3d 426, 429 (4th Cir. 2009).

172–73 (4th Cir. 1994). Because "'police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving'—the facts must be evaluated from the perspective of a reasonable officer at the scene, and the use of hindsight must be avoided." *Waterman v. Batton*, 393 F.3d 471, 476–77 (4th Cir. 2005) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)) (internal citations omitted).

As this Court has said, the doctrine affords officers "additional breathing room" for decisions made on the spot. *Merchant v. Fairfax Cnty.*, 778 F. Supp. 2d 636, 647 (E.D. Va. 2011). One purpose of qualified immunity "is a desire to avoid overdeterrence of energetic law enforcement." *Rowland v. Perry*, 41 F.3d 172 (4th Cir. 1994). The doctrine has special importance "in the context of street-level police work, which frequently requires quick and decisive action in the face of volatile and changing circumstances." *Id.* Qualified immunity "gives ample room for mistaken judgments." *Malley v. Briggs*, 475 U.S. 335, 343 (1986). The doctrine protects all officers except "the plainly incompetent." *Waterman*, 393 F.3d at 476.

### B. Lee Has Not Established a Violation of his Fourth Amendment Rights

Consistent with the principles of qualified immunity, the Court will examine the facts in the case and determine whether a constitutional violation occurred.

The Fourth Amendment forbids unreasonable searches and seizures. The use of deadly force is a seizure of the person. *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). This case presents the issue whether Marks' use of lethal force was reasonable, under the Fourth Amendment.

The use of deadly force by a policeman is not excessive when the officer has a reasonable apprehension that the suspect poses a threat to the officer or to others. *Tennessee*, 471 U.S. at 11. In judging whether a particular use of force satisfies the reasonableness standard, a court must view the situation facing the officer from his viewpoint. *Elliott v. Leavitt*, 99 F.3d 640, 642

8

(4th Cir. 1996). An officer's use of force is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Conner*, 490 U.S. 386, 396 (1989).

Fourth Amendment excessive force cases apply a reasonableness test to determine the legality of a use of force. First, the court must determine what the officer knew and saw. In a sense, this is a subjective inquiry, because it focuses on what the officer knew. *See id.* at 396-97. Next, the court decides whether, in light of those facts, the use of force was objectively reasonable and therefore in compliance with the Fourth Amendment. *See id.*

Fourth Amendment analysis must take into account that officers often have to make decisions with imperfect knowledge. *Milstead v. Kibler*, 243 F.3d 157, 165 (4th Cir. 2001). Officers need not "gamble" with their lives. *Elliott*, 99 F.3d at 641. In almost all cases, a resourceful plaintiff can think of any number of things the officer could have done differently; it is easy to second guess a police officer's decision from the safe confines of a law office. *See Graham*, 490 U.S. at 396–97. But such analysis does not ask the relevant questions: "courts cannot second guess the split-second judgments of a police officer to use deadly force in the context of rapidly evolving circumstances." *Milstead*, 243 F.3d at 165. Applying these principles to the facts in this case, Marks' actions clearly were objectively reasonable. Lee posed a grave risk to the officers on the scene, and to citizens on the street:

- Marks could reasonably conclude that Lee was high on marijuana, which would affect his judgment.
- Marks knew that Lee had driven straight at him, threatening a head-on collision.
- Lee dragged Marks hanging out of the car door until his car hit a wall and stopped.
- Lee disregarded Marks' orders to stop his car and to stop fighting.

- Lee cursed the officers.
- Lee fought with the officers.
- Lee tried to drive away with his car in reverse and, in fact, drove 45 feet.
- Lee left Marks on the ground.
- Lee dragged Marks as he drove backwards.

These circumstances lead to the reasonable conclusion that Lee posed a threat to Marks, the other officers on the scene, and any citizens who happened by. Thus, Marks' use of deadly force did not violate the Fourth Amendment.

Even if one assumes, as Lee argues, that Marks was standing beside the car and was not dragged when Lee drove in reverse, the facts lead to the same conclusion. Lee still was intoxicated, still had driven his car straight at Marks' cruiser, still had disobeyed Marks' orders, still had cursed and fought with the officers, and still had dragged Marks forward until his car hit a wall. Lee had fired up his automobile and again created real danger for Marks, for the other officers on the scene, and for any other hapless motorists Lee might encounter. Even from the plaintiff's point of view, Marks reasonably used force to stop Lee from posing a legitimate threat to safety.

*Waterman v. Batton*, 393 F.3d 471 (4th Cir. 2005), guides the Court in this case. In *Waterman*, a motorist led the police on a long chase. *Waterman*, 393 F.3d at 473-74. He came to a toll booth where the police had set up measures to stop him from going further. *Id.* at 474. As he approached the toll gate, he slowed down, but then started to drive away suddenly. *Id.* The officers shot and killed him. *Id.* at 475. The Court held that the actions of the officers in firing as he approached them were reasonable under the Fourth Amendment. *Id.* at 480. Nothing required them to wait to see if the motorist would run them down. *Cf. id.*

10

Similarly, in this case an officer in Marks' shoes would know that Lee had already come close to using his car as a weapon to hit an officer, had dragged an officer until his car hit a stop sign and wall causing it to stop, had driven off a second time with Marks hanging beside the door. While it is possible that Lee intended no harm, Officer Marks could not have known Lee's subjective intent. Instead, he saw—quite accurately—a man who posed a real threat to others. Under *Waterman*, his use of force was reasonable, and does not violate the Fourth Amendment.

## C. Marks Enjoys the Protection of Qualified Immunity

Even if the facts in this case somehow amounted to a constitutional violation, Marks would still enjoy the protection of qualified immunity. Again, the Court must view the events through Marks' eyes. Then it must ask whether a reasonable officer could think that his actions complied with the Fourth Amendment.

To establish a qualified immunity defense in a Fourth Amendment case, the defendant need only show attenuated reasonableness. The court asks not whether the search or seizure was reasonable, but rather whether a reasonable officer could believe that his actions were reasonable. The Fourth Amendment allows some breathing room for street-level decisions, recognizing that they may not always be perfect choices. *See Graham*, 490 U.S. at 396–97; *Milstead*, 243 F.3d at 165. Qualified immunity expands the target area of permissible judgments by allowing reasonable errors.

Without rehashing the facts, a reasonable officer would conclude that use of deadly force complied with the Fourth Amendment. Indeed, an officer familiar with *Waterman* would

understand that a car can be a dangerous instrumentality, and that officers have a right to use deadly force to stop a car that poses danger. Qualified immunity protects Marks.[4]

### D. The Case Does Not Implicate Due Process

The plaintiff attempts to assert a substantive due process claim arising from the shooting. Due process is not implicated in this case. The Supreme Court has held:

> Today we make explicit what was implicit in *Garner*'s analysis, and hold that *all* claims that law enforcement officers have used excessive force—deadly or not — in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

*Graham*, 490 U.S. at 395 (1989). Under *Graham v. Connor*, 490 U.S. 386 (1989), the Court must apply Fourth Amendment analysis to the facts in this case. Thus, Lee cannot assert a Fourteenth Amendment claim.

Even putting *Graham* aside, any substantive due process claim would fail in this case. To violate substantive due process, conduct must be so bad that it shocks the conscience. Typically, it entails conduct intended to injure a person, without any justifiable government interest. *Huggins v. Prince George's Cnty.*, 683 F.3d 525, 535 (4th Cir. 2012). At a minimum, substantive due process violations involve state action so arbitrary and egregious as to shock the conscience. *Slaughter v. Mayor of Baltimore*, 682 F.3d 317, 321 (4th Cir. 2012). Substantive due process violations involve conduct that goes beyond merely tortious conduct; otherwise

---

[4]The defendant also claims that second prong of the defense of qualified immunity—that he did not cross a clear line—provides a complete defense. Although the Court does not need to reach this issue, it observes in passing that a reasonable officer would not have recognized the illegality of his acts in the factual context of this case.

substantive due process simply becomes a constitutional font of tort law. *Waybright v. Frederick Cnty.*, 528 F.3d 199, 204 (4th Cir. 2008).

The facts in this case do not show a substantive due process violation. While tragic, they simply do not shock the conscience. Rather, they paint a sad picture of a young man resisting arrest and endangering police officers. No doubt the officers and Lee's family wish the events had never occurred. In context, however, Lee's conduct led inexorably to his death. The officer's reaction simply does not shock the conscience.

*E. The Assault and Battery Claims Fail*

The evidence does not establish an assault and battery claim. Under Virginia law, the torts of assault and battery are defeated if the officer had legal justification for the act. *See Koffman v. Garnett*, 574 S.E.2d 258, 261 (2003). Virginia police officers are lawfully justified to use reasonable force in furtherance of their duties. *See Pike v. Eubank*, 90 S.E.2d 821, 827 (1956); *McLenagan v. Karnes*, 27 F.3d 1002, 1009 (4th Cir. 2004). As discussed above, Marks used reasonable force under the circumstances of this case to protect himself and others. Thus, Lee's assault and battery claims must fail.

Marks asserts "good faith immunity" to protect himself from the claims of assault and battery (as well as all the plaintiff's other state law claims). (Pl.'s Mot. Dismiss, Dk. No. 19 at 19–20.) According to Marks, when an officer acts in "good faith," he enjoys complete immunity for his actions. The Court does not believe that Virginia recognizes such broad brush immunity. While Virginia courts often use the words "good faith," in excessive force decisions, it is typically coupled with some form of "reasonable." *See e.g,. Davidson v. Allam*, 130 S.E. 245, 373 (1925). The Court believes that the Virginia courts are simply rephrasing the general defense of reasonableness. At most, they mean that an officer cannot escape liability if he shoots

someone in malice, bad faith, or with evil intent. In any event, this Court need not definitively interpret the Virginia decisions because it holds that Marks justifiably fired the fatal shots.

## F. The Gross Negligence Claim Fails

The plaintiff's gross negligence claim also fails. It is difficult to see how any concept of negligence applies in this case, where the shooting occurred intentionally. In any event, Virginia defines gross negligence as the "absence of slight diligence, or the want of even scant care." *Colby v. Boyden*, 400 S.E.2d 184, 133 (1991) (citing *Frazier v. City of Norfolk*, 362 S.E.2d 688, 691 (1987)). Here, Marks begged Lee to stop his aggressive and dangerous actions. Only after Lee ignored his pleas did Marks fire his weapon. His actions are completely reasonable and do not satisfy Virginia's gross negligence standard.

## G. The Wrongful Death Claim Fails

Virginia's wrongful death statute does not provide a cause of action, but rather grant a right of action to the deceased victim's family. Va. Code § 8.01-50. A wrongful death claim is a procedural vehicle for third parties to assert a claim that, had the victim survived, would belong to the victim. Since Lee's substantive claims cannot go forward, his wrongful death claim also fails.[5]

---

[5] To the extent the wrongful death claim arises from simple negligence, sovereign immunity bars it completely. *Colby v. Boyden*, 241 Va. 125, 129 (1991).

## IV. Conclusion

For the reasons stated above, the Court GRANTS the defendant's motion for summary judgment.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order shall accompany.

Date: February 27, 2013
Richmond, VA

/s/ _____
John A. Gibney, Jr.
United States District Judge